## A04A0707. ODOM v. THE STATE.
### (600 SE2d 759)

PHIPPS, Judge.

A jury found Holly Odom guilty of committing aggravated child molestation upon A. S., a child under the age of 16 years, by participating in oral sex with a man in the child's presence, guilty of being a party to the crime of aggravated child molestation by allowing and encouraging A. S. to perform oral sex upon the man, and guilty of enticing a minor for indecent purposes by taking A. S. to a location for the purpose of committing indecent acts of child molestation and aggravated child molestation upon her. Odom appeals her convictions of these crimes, contending that the trial court erred in failing to grant her motion for a directed verdict on the aggravated child molestation count, in failing to exclude certain evidence, and in failing to strike for cause two jurors. Because these contentions have no merit, we affirm.

A. S., age 17 at trial, testified that in 1999, when she was 13 or 14 years old, she and Odom, her "birth mother," would sneak out of her grandmother's house to meet Ron Mooney, who was about 45 years old. Mooney would take them to Debra Watson's home, where Mooney, Odom, and A. S. would go into a bedroom and take off their clothes; Mooney would give them crack cocaine; A. S. would perform oral sex on him while Odom was in the room; and Odom would perform oral sex on him while A. S. was in the room. A. S. testified, "I just thought [performing oral sex on Mooney] was okay because my mom was doing it and she said it was okay."

On cross-examination of A. S., Odom's trial counsel pointed out that, during a prior interview with a detective and a counselor, A. S. made statements inconsistent with parts of her trial testimony. He further sought to establish that A. S.'s recollection of her encounters with Odom and Mooney was unreliable because, during those encounters, A. S. was under the influence of crack cocaine.

Later during the trial, the state called a police detective who had investigated the case against Odom. He recalled attending a forensic interview of A. S. The interview had been recorded on videotape, and the state presented it to the jury.

The state also presented the testimony of Watson, who stated that Mooney would bring drugs and different people to her home "for sexual purposes and to sell the dope." She recalled seeing Odom and A. S. there performing oral sex on Mooney and receiving drugs from him. Watson further admitted that she, too, had traded sexual acts with Mooney for drugs at her home.

At the close of the state's case, Odom moved for a directed verdict on all counts, which the trial court denied.

1. Odom contends that the trial court erred in denying her motion for a directed verdict of acquittal on the charge of aggravated child molestation.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001). We view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).[1]

A person commits child molestation by doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[2] An act of child molestation becomes "aggravated" when it "physically injures the child or involves an act of sodomy."[3] "Sodomy" is defined as a "sexual act involving the sex organs of one person and the mouth or anus of another."[4]

Odom argues that the state failed to establish that her act of performing oral sex was done for arousal because the evidence showed that she had exchanged the act for crack cocaine. Whether Odom had the requisite intent for aggravated child molestation was a question of fact for the jury, after it had considered all the circumstances surrounding the act(s), including words, conduct, demeanor, and motive.[5] The evidence showed that Odom performed oral sex on Mooney in A. S.'s presence while the three were disrobed. That Odom expected Mooney to give her and A. S. crack cocaine did not exclude a finding that Odom also intended the sexual act to arouse or satisfy her or A. S.'s sexual desires. As the evidence was sufficient to allow a jury to find Odom did have the requisite intent, the trial court did not

---

[1] *Head v. State*, 261 Ga. App. 185, 186 (1) (582 SE2d 164) (2003).

[2] OCGA § 16-6-4 (a).

[3] OCGA § 16-6-4 (c).

[4] OCGA § 16-6-2 (a).

[5] See *Kidd v. State*, 257 Ga. App. 744 (1) (572 SE2d 80) (2002); *McEntyre v. State*, 247 Ga. App. 881, 882 (545 SE2d 391) (2001).

err in denying the motion for directed verdict on the charge of aggravated child molestation.[6]

2. Odom contends that the trial court erred in permitting Watson to testify that she had traded sexual acts with Mooney for drugs from him. She argues that the evidence was irrelevant. Further, characterizing Watson's acts as similar transactions, Odom argues that the trial court should have barred the testimony because there was no pretrial hearing pursuant to Uniform Superior Court Rule 31.1.

(a) The prosecutor countered Odom's relevancy objection at trial by arguing that the cited testimony supported A. S.'s testimony by showing the "type of activity that was going on in that [home]." The trial court did not abuse its discretion in overruling Odom's objection.[7]

(b) Because no objection based on a failure to comply with USCR 31.1 was made at trial, this claim of error was waived.[8] Moreover, similar transaction evidence contemplates acts involving the accused.[9] And, as Odom maintains on appeal, Watson's sexual acts with Mooney did not involve her.

3. Odom claims that the trial court erred in admitting the videotape, arguing that the tape improperly bolstered A. S.'s testimony. A witness's prior consistent statements are admissible where (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination.[10] As these requirements were met, the trial court did not err in admitting the videotape.[11]

4. Odom contends that the trial court erred in denying her motions to strike for cause Juror No. 34 and Juror No. 75, asserting that each of those jurors had expressed an inability to render an impartial verdict. She complains that she had to use peremptory strikes to remove them from the panel.

Juror No. 34 marked on her jury questionnaire that she felt that she would be able to sit as a fair and impartial juror in this case, but then commented, "I have taught school for 25 years. I have had to deal with children. They are our most precious resources. They should be protected." Following up on that comment during voir dire, Odom's trial counsel asked that juror, "this role that you see yourself in in your life, does that create in you a bias or a prejudice towards in this

[6] See *Kidd*, supra; *McEntyre*, supra.

[7] See *O'Neal v. State*, 254 Ga. 1, 3 (3) (325 SE2d 759) (1985).

[8] See *Morrison v. State*, 256 Ga. App. 23, 25 (2) (567 SE2d 360) (2002).

[9] See *Williams v. State*, 261 Ga. 640, 641-643 (409 SE2d 649) (1991).

[10] *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985); *Woodard v. State*, 269 Ga. 317, 319-320 (2) (496 SE2d 896) (1998).

[11] See *Cuzzort*, supra; *Woodard*, supra; *Knight v. State*, 210 Ga. App. 228, 230 (2) (435 SE2d 682) (1993).

case the prosecution, who is here extensively on behalf of the child?" She answered, "I think I would have to look at all the evidence and weigh all of it, including whatever; you know, if it was the child that spoke or the witnesses. In order to be fair to anyone, you have to hear everything." When Odom's trial counsel next asked Juror No. 34 whether she could set aside that role and her personal feelings to decide the case based on the evidence and the law as charged by the judge, she responded, "Intellectually, I can, yes, sir. Intellectually, yes. I think if you're going to make that kind of decision, you have to do it without emotion, without prejudice." Defense counsel began, "So you're telling us that you would be —," and Juror No. 34 interrupted, "I think I could, yes, sir." Defense counsel continued, "— or you just think you could?" Juror No. 34 stated, "I think I could."

Juror No. 75 marked on her jury questionnaire that she felt that she would be unable to sit as a fair and impartial juror in this case, explaining "I would lean more toward the innocence of the child. I'm not sure if I could be impartial to *any* adult accused of abuse toward a child." During voir dire, the prosecutor noted this response and asked Juror No. 75 whether she could follow the judge's instructions and "make a fair decision" based on the evidence. She answered, "I would hope so, but I'm not sure if I could. I feel strongly about abuse of any kind, sexual or anything." The prosecutor asked her whether she would be able to listen to the evidence and follow the law to determine whether abuse had occurred "before [getting] to that point of feeling strongly about abuse." She answered, "I would try to, yes." To the prosecutor's next question of how she would be able to do that, she responded "I'm not quite sure. I don't know. I'm not — Honestly, I do not know. . . . I do follow directions well, I do listen well. I'm not sure for an honest answer." The prosecutor next asked her whether she would "necessarily" and "automatically" believe the child victim; she answered, "I think I could listen to both sides, but I'm more apt to believe the child, having been in the education field." Finally, the prosecutor asked her, "If the judge tells you that you're to make the determination as to credibility of the witnesses, based on rules, you know, do you think you can follow his direction and do that?" She answered, "I certainly will try, yes."

Whether to strike a juror for cause lies within the sound discretion of the trial court. *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993). For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence and the court's charge upon the evidence. Id.; *McClain v. State*, 267 Ga. 378,

380 (1) (a) (477 SE2d 814) (1996). A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. *Waldrip v. State*, 267 Ga. 739, 745 (8) (c) (482 SE2d 299) (1997). A conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference. *Kirkland v. State*, 271 Ga. 217, 219 (2) (518 SE2d 687) (1999).[12]

The responses given by Juror No. 34 and Juror No. 75 during voir dire did not require a determination that they held an opinion concerning Odom's guilt so fixed and definite that they could not decide the case based on the law and the evidence. Although each juror expressed some doubt and reservation about setting aside personal experiences and deciding the case impartially, each indicated that she could be a fair and impartial juror. "[W]hen a potential juror states that he or she will 'try' to decide the case based upon the court's instructions and the evidence," excusal is not required.[13] Furthermore, the trial court was uniquely positioned to observe the demeanor of each juror and thereby evaluate her capacity to render an impartial verdict. Giving deference to the trial court's finding that Juror No. 34 and Juror No. 75 were credible in stating that they would serve as unbiased jurors, we cannot conclude that the trial court abused its discretion in denying Odom's motions to strike for cause these jurors.[14]

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 7, 2004.

*William H. Kitchens, Jr.*, for appellant.

*Jason J. Deal, District Attorney, Melissa J. Sanford, Assistant District Attorney*, for appellee.

---

[12] *Hyde v. State*, 275 Ga. 693, 695-696 (4) (572 SE2d 562) (2002).

[13] (Citation and punctuation omitted.) *Roberts v. State*, 276 Ga. 258, 259-260 (2) (577 SE2d 580) (2003).

[14] See *Roberts*, supra; *Hyde*, supra at 696; *Wilson v. State*, 271 Ga. 811, 815 (5) (a) (525 SE2d 339) (1999); *Clark v. State*, 265 Ga. App. 112 (593 SE2d 28) (2003).